UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL BOETTCHER,

        Plaintiff,

v.                                                   Case No. 08-C-439

METROPOLITAN LIFE INSURANCE CO.,

        Defendant.

## DECISION AND ORDER

Plaintiff Michael Boettcher filed this action against Defendant Metropolitan Life Insurance Company ("MetLife") and Georgia Pacific, LLC ("Georgia Pacific"), claiming that MetLife wrongfully terminated his long-term disability benefits. (Am. Compl. ¶ 15.) The action was originally filed in the Circuit Court for Brown County, Wisconsin (Case No. 08-CV-932), but removed to federal court pursuant to 28 U.S.C. § 1441. Federal jurisdiction arises under 28 U.S.C. § 1331, as the disability benefits Boettcher seeks are provided under a plan subject to and governed by the provisions of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §S1001, *et seq.* Georgia Pacific, Boettcher's employer, was dismissed on stipulation of the parties, and the case is presently before the Court on Metlife's motion for summary judgment.

MetLife filed its motion for summary judgment, accompanied by proposed findings of fact and a brief in support, on September 22, 2008. Boettcher sought and was granted three separate extensions of time to file a response, the last of which expired on December 31, 2008. (*See* Margin Orders Oct. 24, 2008, Nov. 06, 2008, Nov. 25, 2008.) Boettcher has yet to file a response to

MetLife's motion and, thus, the proposed findings of fact submitted by MetLife are deemed true. *See* Civil L.R. 56.2(e) ("In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out."). Notwithstanding Boettcher's failure to respond, the Court must still determine from the undisputed facts whether MetLife is entitled to summary judgment. *See Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir.1992) (where appellant failed to respond to summary judgment motion, the court would err in granting summary judgment "where it is apparent from the record that there are contested issues of material fact."). Having now considered MetLife's the entire record, the Court concludes that MetLife's motion should be granted.

## FACTS

Boettcher was employed by Georgia Pacific as Mill Lubrication Supervisor (Broadwater Aff., ¶ 3.) Georgia Pacific sponsored a long term disability benefits plan for eligible employees. (*Id.* ¶ 2.) The Plan expressly names MetLife as the Plan Administrator and delegates to MetLife the administrative and interpretive discretion to resolve benefit claims. (PFOF ¶ 13.) On August 14, 2006, MetLife approved Boettcher's claim for short term disability benefits due to Boettcher's recurrent deep vein thrombosis, leg pain and weakness, and dizziness and presyncopal episodes. (PFOF ¶¶ 29, 30-31, 33.). Boettcher at the time was under work restrictions which included sitting no more than sixty minutes at a time followed by five minutes of walking, no climbing over two-three feet, no work near potentially dangerous machinery, no driving at work, and standing no more than thirty to sixty minutes at a time. (PFOF ¶ 28.) Boettcher's file was thereafter referred to a long term disability case manager. (PFOF ¶ 33.) On October 16, 2006, MetLife approved long term

2

disability benefits for Boettcher. (PFOF ¶ 42.) After that, MetLife requested updates regarding Boettcher's disability from Boettcher's doctor. (PFOF ¶ 43.)

In August of 2007, Dr. Anthony Jaslowski, Boettcher's treating physician, reported that Boettcher was not restricted – permanently or otherwise – from the essential functions of his job. Dr. Jaslowski reported that Boettcher could work "light/modified duty" with the only restriction being that the "maximum hours of sitting" should not exceed two hours. (PFOF ¶ 47.) Based upon Dr. Jaslowski's report, MetLife terminated Boettcher's claim for long term disability benefits as of September 4, 2007. (PFOF ¶ 48.) Boettcher appealed the termination of long term disability benefits, and submitted in support of his appeal an amended report from Dr. Jaslowski, dated December 11, 2007, which contradicted his previous report on which MetLife's decision to terminate his benefits was based. MetLife then submitted Boettcher's medical information to Dr. James Wortman, M.D., who was Board Certified in Medical Oncology and Internal Medicine, for independent medical review. (PFOF ¶ 54.)

Dr. Wortman issued a report on January 28, 2008 (updated on February 16, 2008), in which he concluded that the medical information relating to Boettcher's condition "does not support functional limitations beyond 09/04/2007." (PFOF ¶ 60.) Dr. Wortman noted in his report that he had discussed Boettcher's condition with Dr. Jaslowski, and Dr. Jaslowski agreed that Boettcher was "not functionally limited in any way and that he could work at his old previous level of employment." (PFOF ¶ 59.) Due to his deep vein thrombosis, Dr. Jaslowski thought it reasonable that Boettcher get up every hour or two to prevent any recurrences. (*Id.*) While Dr. Wortman thought Dr. Jaslowski's recommendation reasonable, he observed that such a requirement was "certainly not enough to cause any significant job impairment in any medium job description that

3

I am aware of." (PFOF ¶ 60.) Dr. Wortman also noted there were "no specific, clinical findings/data in the medical records in support of functional limitations." (*Id.*)

MetLife submitted a copy of Dr. Wortman's report Dr. Jaslowski for comment, but received no response. (PFOF ¶ 61.) On February 15, 2008, MetLife issued a letter upholding its decision to terminate Boettcher's long term disability benefits. (PFOF ¶ 62.) It is that decision the Court must review.

**DISCUSSION**

A participant is considered disabled under the terms of the Plan when:

> Due to sickness . . . you are receiving appropriate care and treatment from a doctor on a continuing basis; and during the first 24 months following your elimination period, you are unable to earn more than 80% of your pre-disability earnings or indexed pre-disability earnings . . . at your own occupation for any employer in your local economy.
> . . . .
> Your loss of earnings must be a direct result of your sickness . . . .

(PFOF ¶16.)

The Plan granted MetLife discretionary authority to interpret its terms and to determine eligibility for benefits. It states:

> Notwithstanding any contrary provision in this SPD [Summary Plan Description] or the disability plan, all decisions, acts and/or determinations by Georgia-Pacific and the benefit claim processor hereunder shall be final, binding and conclusive on all persons and parties and shall not be overturned unless such decisions, acts and/or determinations ane determined by a court of competent jurisdiction to be arbitrary and capricious.

(PFOF ¶ 14.) Thus, MetLife's decision terminating Boettcher's long-term disability benefits is entitled to strong deference by the Court and may not be overturned unless it is arbitrary and capricious. Under this standard,

4

> [A] court will not set aside the denial of a claim if the denial is based on a reasonable interpretation of the relevant plan documents. Nor will it do so where the trustee has based its decision "on a consideration of the relevant factors" that encompass the "important aspects of the problem" before it. If the trustee makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, i.e., one that makes a "rational connection" between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the trustee's decision is final.

*Cuddington v. N. Ind. Pub. Serv. Co.*, 33 F.3d 813, 817 (7th Cir. 1994) (quoting *Exbom v. Cent. States, Se. & Sw. Health & Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990) (citations omitted)).

MetLife's decision in this case clearly meets this standard. It engaged in a thorough inquiry regarding Boettcher's health issues prior to terminating his long term disability benefits. The initial decision terminating Boettcher's benefits was based on the report of Boettcher's own physician. Dr. Jaslowski reported that "Boettcher was not restricted – permanently or otherwise – from the essential functions of his job. Dr. Jaslowski also indicated that Boettcher could work 'light/modified duty' with the only restriction being that the 'maximum hours of sitting' should not exceed two hours." (PFOF ¶ 47.) Although Dr. Jaslowski submitted an amended report that appeared to contradict his earlier report, he reaffirmed the earlier findings in a conversation with Dr. Wortman, who also concluded that there were no functional limitations that prevented Boettcher from returning to his previous employment. Dr. Jaslowski's failure to comment on Dr. Wortman's report when offered the opportunity to do so provides further support for MetLife's determination that he was no longer disabled.

5

Even by itself, Dr. Wortman's thorough and detailed report would be sufficient to uphold MetLife's determination under the arbitrary and capricious standard of review. The fact the Dr. Jaslowski offered no comment to Dr. Wortman's report, including the portion recounting Dr. Wortman's discussion with Dr. Jaslowski, strongly suggests that even Boettcher's treating physician did not disagree with the conclusion that he could return to work. Under these circumstances, this Court has no authority to overturn MetLife's decision. The decision terminating Boettcher's benefits is not arbitrary and capricious; indeed, it is substantially supported by the evidence. MetLife's motion for summary judgment must therefore be granted. The Clerk is directed to enter judgment for the defendant dismissing plaintiff's claims

**SO ORDERED** this  9th  day of February, 2009.

  s/ William C. Griesbach  
William C. Griesbach  
United States District Judge